FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 13, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| INDUSTRIAL WELDING COMPANY, INC, a Washington profit corporation; S & R JORDAN, LLC, a Washington limited liability company; and STACEY and RONDA JORDAN, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF WASHINGTON; WASHINGTON STATE DEPARTMENT OF TRANSPORTATION; ROGER MILLAR, in both his individual capacity and official capacity as the Transportation Secretary of the Washington State Department of Transportation,<br><br>Defendants. | NO. 2:23-CV-0174-TOR<br><br>ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendants' Motion for Summary Judgment (ECF No. 32). The Court has reviewed the record and files herein, and is fully

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUGDMENT ~ 1

informed, finding oral argument unnecessary. For the reasons discussed below, Defendants' Motion for Summary Judgment (ECF No. 32) is GRANTED in part.

## BACKGROUND

This matter arises out of condemnation proceedings of Plaintiffs' property. The property, Industrial Welding Company, Inc. ("IW"), and related land parcel is located at 1203 N. Greene Street in Spokane, Washington. ECF No. 36 at 14, ¶ 31. The business has been in the Jordan family since the 1970s, and deals in specialized welding and fabrication. *Id.*, ¶¶ 30, 31. The business also leased and utilized a triangle shaped property across the street. *Id.* at 15, ¶ 34. In 1999, Mr. Jordan's father was first approached by the Washington State Department of Transportation ("WSDOT"), alerting him that the property was potentially in the path of the North Spokane Corridor ("NSC") project, and therefore may be subject to condemnation. *Id.*, ¶ 34.

The NSC project was funded by the legislature in 2015, and that same year WSDOT representatives visited IW to inform Plaintiffs that the property would be taken "in one to three years." ECF No. 33 at 2, ¶ 8. Plaintiffs also maintain that the representatives informed them that WSDOT would provide assistance in relocating the business. ECF No. 36 at 16, ¶ 36. However, despite its promise to do so, Plaintiffs allege that WSDOT was not helpful in their search for a new location, as no funds were available for that purpose yet. *Id.*, ¶ 37. Plaintiffs

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUGDMENT ~ 2

1  retained an attorney, Tim Stiles, to facilitate communication with WSDOT moving

2  forward. ECF No. 33 at 7, ¶ 9.

3      On June 7, 2016, Mr. Stiles sent a letter to WSDOT explaining that he would

4  be representing Plaintiffs as the NSC project developed. *Id.*, ¶ 10. WSDOT

5  responded the same day, explaining that a revision plan for the area would not be

6  completed for several months. *Id.*, ¶ 11. In November 2016, Mr. Stiles reached

7  out to WSDOT to request an update on the projection of the NSC project, and

8  WSDOT responded stating that IW's property was no longer needed. ECF No. 36

9  at 17, ¶ 39. Parties dispute whether this determination by WSDOT was actually

10 made in June 2016. ECF No. 36 at 17, ¶ 40; ECF No. 42 at 9, ¶ 14. Mr. Stiles

11 reiterated to WSDOT that taking other properties in the area would have a negative

12 impact on IW given the operation of the business, but WSDOT informed him that

13 until the final design was complete, it could not address many of IW's concerns.

14 ECF No. 33 at 4, ¶ 15.

15     In 2017, Mr. Jordan contacted WSDOT regarding the distance between the

16 business and the freeway. *Id.*, ¶ 16. In response, Bob Hilmes, the project engineer,

17 reiterated that the plan was still being finalized and construction was not set to

18 begin until 2022, subject to funds from the legislature. *Id.*, ¶ 17. Plaintiffs

19 maintain that at this point, WSDOT communicated that the IW property would not

20 be needed, but the leased triangle property across the street would be taken. ECF

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUGDMENT ~ 3

1  No. 36 at 17, ¶ 41.  In June 2017, Mr. Hilmes scheduled a visit to the IW property
2  to gain an understanding of how the business functioned as the plan continued to
3  take shape.  ECF No. 33 at 4, ¶ 18.

4  In early 2018, plans for the NSC were still being finalized.  ECF No. 33 at 4,
5  ¶ 19.  During this time, Mr. Stiles reiterated to WSDOT IW's preference that the
6  entire property be taken as operating its business with limitations would not be
7  feasible.  *Id*., ¶ 20.  In June of 2018, WSDOT informed Plaintiffs that it planned to
8  purchase the IW property.  ECF No. 36 at 18, ¶ 43.  And in December 2018,
9  WSDOT began drilling and site testing, causing disruption to Plaintiffs' business.
10  *Id*. at 19, ¶ 44.  In October 2019, WSDOT informed Mr. Stiles that it needed
11  occupancy surveys.  ECF No. 33 at 4, ¶ 21.  That same month, WSDOT and Mr.
12  Stiles met, and WSDOT offered $387,800 for 62,500 square feet of the IW
13  property.  ECF No. 36 at 19, ¶ 45.  The offer was supported by appraisals.  ECF
14  No. 33 at 5, ¶ 22.  Plaintiffs did not respond until August of 2020, and rejected the
15  offer without making a counteroffer.  *Id*., ¶¶ 24, 25.  Defendants also assert that
16  Plaintiffs retained their own appraiser and viewed his valuation as too low.

17  On February 2, 2021, the State then filed a motion adjudicating public use
18  and necessity relying on the existing plans for the project.  ECF No. 33 at 5, ¶ 26;
19  ECF No. 36 at 22, ¶ 55.  During this process, Plaintiffs stipulated to a finding of
20  public use and necessity.  ECF No. 33 at 5, ¶ 27.  In the interim, WSDOT received

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUGDMENT ~ 4

1   the results of a traffic study which indicated that an alternative design was

2   effective, and thus it no longer needed to take IW's property. *Id*. at 5–6, ¶¶ 28, 29.

3   Plaintiffs assert that it was known by WSDOT for certain that the parcel was not

4   needed by January 2021 at the latest, before the finalization of the traffic study.

5   ECF No. 33 at 21, ¶¶ 52–54.  In voluntarily dismissing the condemnation

6   proceedings, WSDOT paid Plaintiffs costs, over $190,000, plus attorneys' fees for

7   the abandoned condemnation.  ECF No. 33 at 6, ¶ 29.  There is still $63,217.75

8   outstanding from the fees and costs Plaintiffs originally sought.  ECF No. 36 at 14,

9   ¶ 29.

10       Plaintiffs brought claims in Spokane County Superior Court for violation of

11  42 U.S.C. §1983 against Washington State Department of Transportation Secretary

12  Roger Millar in his individual and official capacity, civil malicious prosecution

13  against all Defendants, tortious interference with business expectancy against all

14  Defendants, abuse of process against all Defendants, negligence against all

15  Defendants, and outrage against all Defendants.[1]  ECF No. 1-3 at 12–19.

16  Defendants removed this action on June 20, 2023.  ECF No. 1.  They now move

17  for summary judgment on all Plaintiffs' claims.  ECF No. 32.

---

[1] The Court previously dismissed John Doe Defendants 1-10 on March 14, 2024. ECF No. 25.

# DISCUSSION

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court must only consider admissible evidence. *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id*. at 248. Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id*. The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

I.  **42 U.S.C. § 1983**

To establish liability under 42 U.S.C. § 1983, a claimant must prove (1) a person acting under color of state law (2) committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988). Here Plaintiffs assert that their Fourteenth Amendment due process rights were infringed upon as Defendants denied them their property by engaging in arbitrary and capricious condemnation conduct. ECF No. 1-3 at 13. Defendants argue that summary judgment is proper because Plaintiffs can neither show that Secretary Millar was personally involved nor that they were denied any constitutionally protected right. ECF No. 32 at 8–9.

The Fourteenth Amendment provides in relevant part, "nor shall any State deprive person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "The substantive component of the Due Process Clause forbids the government from depriving a person of life, liberty, or property in such a way that … interferes with rights implicit in the concept of ordered liberty." *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 996 (9th Cir. 2007) (internal quotations and

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUGDMENT ~ 7

citation omitted). To establish a substantive due process clause violation, a plaintiff must also allege a "level of executive abuse of power as that which shocks the conscience." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir.2006) (internal citation omitted). The government action must be "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994) (internal citation omitted).

Defendants argue that Secretary Millar cannot be held responsible under § 1983 because he was neither personally involved nor did he have the required knowledge and acquiescence of the use of Plaintiffs' property for the NSC. ECF No. 32 at 10. A supervisor may only be liable for constitutional violations if he or she was personally involved in the deprivation, or a sufficient causal connection exists "between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id*. at 1207–08 (internal citations omitted). Supervisors are not liable merely for being present at the scene of a constitutional violation or for being a member of the same operational unit as the wrongdoer. *Id*. at 936–37.

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUGDMENT ~ 8

Instead, a plaintiff must show that the supervisor ratified the unconstitutional conduct of subordinates; failed to train, supervise, or control their subordinates; or adopted a policy that shows "a reckless or callous indifference to the rights of others." *Id*. at 1205-06 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).

Plaintiffs argue that, while Secretary Millar was not personally involved, he authorized, set in motion, or acquiesced to the condemnation given his job description as laid out in RCW 47.01.260(3) which allows the Department of Transportation to "acquire property as provided by law . . . necessary or convenient for the planning, design, construction . . . and administration of state highway systems" and RCW 47.01.101 which instills in the Secretary of Transportation such abilities as to "direct and coordinate the programs of the various divisions of the department," "adopt department rules," and, "execute and implement the biennial operating budget." Secretary Millar's power is supported in this case, Plaintiffs argue, by the Condemnation Petition, issued on December 17, 2020, stating that "[t]he Secretary of Transportation, as authorized by RCW 47.28.010 . . . has surveyed, located, selected, and adopted part of [Plaintiff's property] for State Route 395 . . . [t]he property and the property rights that the state seeks to acquire . . . are necessary for the construction, maintenance, and operation of a state highway, which is a public use." ECF No. 40 at 28. Finally, Plaintiffs argue that

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUGDMENT ~ 9

WSDOT agreed that Secretary Millar was the "ultimate decision maker," with respect to the Department. ECF No. 37 at 22. Defendants argue that Plaintiffs have produced no evidence that Secretary Millar approved of or acquiesced to any alleged violations of their constitutional rights. ECF No. 32 at 10.

Based on the content of the provided depositions, and in taking the facts in the light most favorable to Plaintiffs, the Court does not find Secretary Millar liable for a substantive due process violation in his supervisory role. As both parties point out, the NSC Project has been percolating since at least 1999, and while there is no information on the record as to when Secretary Millar was installed, the Court is confident it was after that point. In the nearly three decades since they first learned of the condemnation, Plaintiffs do not point to a "'policy or custom' ... [that] played a part in the violation of federal law,'" which WSDOT or Secretary Millar imposed or enforced. *McRorie v. Shimoda*, 795 F.2d 780, 783 (9th Cir. 1986). Instead, Plaintiffs claim that Secretary Millar "set into motion" or otherwise declined to intervene in, the acquisition of their property. ECF No. 35 at 10. However, this connection seems tenuous, especially given that Plaintiffs offer no evidence that Secretary Millar knew WSDOT employees were potentially violating the constitutional rights of others in the course of their work and turning a blind eye. *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). Secretary Millar attested that he had no knowledge of the specific factual contents

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUGDMENT ~ 10

of the claims alleged in his personal or official capacity. ECF No. 34-2 at 15, ¶ 8. And while true that the Federal Rule of Civil Procedure 30(b)(6) witness for WSDOT described Secretary Millar as effectively in charge of the Department, his duties were not unequivocal:

> Q. Mr. Millar, as the secretary of transportation, is ultimately responsible and supervisor of all you people, correct?
>
> A. That's correct.
>
> Q. All final decisions ultimately flow through the secretary, Mr. Millar?
>
> A. He's the secretary of transportation, but to use the term supervisor of all of us, I think would be a little bit inaccurate.

ECF No. 37 at 22.

To underscore this point, and consistent with RCW 47.01.101(3), information on the record suggests that Mr. Hilmes in his capacity as project engineer was the managing force behind the decisions and had discretion to determine what was necessary for the project, with additional input from other individuals. ECF No. 43-3 at 44; ECF No. 37 at 56, 69, 78, 85, 86, 87, 88. But detrimentally to Plaintiffs' claim, no evidence in the record suggests that Secretary Millar was involved beyond his figure head role as the Secretary of Transportation, which is untenable under 42 U.S.C. § 1983. *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018) (internal citation and quotation omitted) ("Without that crucial connection, plaintiffs' argument is nothing more than an attempt to hold the UC

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUGDMENT ~ 11

administrators liable solely by virtue of their office. That argument fails because there is no respondeat superior liability under section 1983."). Plaintiffs fail to put forth any information that Secretary Millar knew or should have known of constitutional violations being committed by his staff, and either actively encouraged the conduct or willfully chose to leave it uncorrected. Therefore, while questions of fact likely still remain on the substance of Plaintiffs' claim, summary judgment is proper because Secretary Millar is an improper defendant.

## II.    Remaining State Law Claims

Having dismissed the federal claim, the Court declines to exercise jurisdiction over Plaintiff's state law claims of malicious prosecution, tortious interference with business expectancy, abuse of process, negligence, and outrage. This matter was removed on the basis of this Court's federal and supplemental jurisdiction, pursuant to 28 U.S.C. §1441(c) as containing both federal and state law causes of action. ECF Nos. 1-3 at 12–19 and 1-9. A federal court has supplemental jurisdiction over pendent state law claims to the extent they are "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir.

2004) (internal citation omitted).

Once the court acquires supplemental jurisdiction over state law claims, the court may decline to exercise jurisdiction under several circumstances, including where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). A court may also decline to exercise jurisdiction where the claim raises a novel or complex issue of state law, the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, or in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), *superseded on other grounds by statute as stated in Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010). "[D]istrict courts may decline to exercise jurisdiction over supplemental state law claims in the interest of judicial economy, convenience, fairness and comity." *Smith v. Lenches*, 263 F.3d 972, 977 (9th Cir. 2001) (citing *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997)). This declination of jurisdiction may be raised by the parties or *sua sponte* by the Court. *See Acri v. Varian Assocs., Inc.,* 114 F.3d 999, 1001 n.3 (9th Cir. 1997) (en banc).

Here, not only has the Court dismissed the only claim over which it had original jurisdiction, but state law claims abound this case, making up the factual background of most of the suit. As such, for the purposes of comity and fairness, the Court finds the remaining issues better addressed by the Spokane County Superior Court. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.").

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (ECF No. 32) is **GRANTED in part.**

2. Judgment shall be entered in favor of Defendant Millar on the 42 U.S.C. § 1983 claim for violation of the Fourteenth Amendment's substantive due process clause.

3. Pursuant to 28 U.S.C. § 1367(c), Plaintiffs remaining state law claims of malicious prosecution, tortious interference with business expectancy, abuse of process, negligence, and outrage are **REMANDED** to the

Spokane County Superior Court, State of Washington, for all further proceedings (former Spokane County Case No. 23-2-02010-32).

The District Court Executive is directed to enter this Order, furnish copies to counsel, and <u>mail a certified copy to the Clerk of the Spokane County Superior Court</u>. The deadlines, hearings and trial date are **VACATED,** and the file is **CLOSED.**

DATED March 13, 2025.



THOMAS O. RICE
United States District Judge

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUGDMENT ~ 15